IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | | |
|---|---|---|
| BRANDON & JAMIE WATTERS, | ) | Civil No. 2:11-CV-00177-BSJ |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM OPINION** |
| vs. | ) | **& ORDER** |
| | ) | |
| MIDLAND CREDIT MANAGEMENT, | ) | |
| INC. & BENNETT LAW, PLLC, | ) | |
| | ) | |
| Defendants. | ) | |

```
┌─────────────────────────────┐
│           FILED             │
│  CLERK, U.S. DISTRICT COURT │
│    May 8, 2012 (12:25pm)    │
│      DISTRICT OF UTAH       │
└─────────────────────────────┘
```

* * * * * * * * *

# I. INTRODUCTION

This matter arises out of plaintiff Jamie Watters' alleged failure to repay a debt owed to defendant Midland Credit Management, Inc. ("Midland"). Midland hired defendant Bennett Law, PLLC ("Bennett Law") to recover the debt.

As a result of the manner in which defendants attempted to collect the alleged debt, Jamie Watters and her husband, Brandon ("plaintiffs"), filed a complaint in this court alleging that both defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*[1]

In paragraphs ten and eleven of their complaint, plaintiffs set forth facts in an attempt to allege a *prima facie* case of violations of 15 U.S.C. §§ 1692e(2)(A),[2] 1692e(10),[3] and 1692f.[4]

---

[1](*See* Pls.' Compl., filed Feb. 15, 2011 (dkt. no. 2), ¶ 9 ("Within the last year, Defendants took multiple actions in an attempt to collect a debt from Plaintiffs. Defendants' conduct violated the FDCPA in multiple ways, including the following.").)

[2]15 U.S.C.A. § 1692e(2)(A) (2009) reads as follows:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general

(continued...)

On September 15, 2011, Bennett Law filed a motion for summary judgment.[5] In its memorandum in support of its motion for summary judgment, Bennett Law argued that plaintiffs were not entitled to relief under any of the foregoing sections.[6] On November 28, 2011, this court entered an order granting defendant's motion as to plaintiffs' § 1692e(2)(A) claim, but denied defendant's motion as to plaintiffs' §§ 1692e(10) and 1692f claims.[7] Paragraph eleven of the complaint encompasses the facts which allege a breach of §§ 1692e(10) and 1692f. Therein, plaintiffs allege that Bennett Law

> reneg[ed] on an agreement it made with Plaintiff to forestall further collection actions as long as Plaintiff made payments of $25 per month toward the debt. Defendant Bennett Law also told Plaintiff in relation to the debt that he would be pre-notified if Defendant ever intended to change the agreement or to file suit, but Defendant Bennett Law went ahead with a lawsuit against Plaintiff without

---

[2](...continued)
application of the foregoing, the following conduct is a violation of this section: . . . .

> (2) The false representation of—
> (A) the character, amount, or legal status of any debt . . . .

[3] 15 U.S.C.A. § 1692e(10) (2009) reads as follows:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . .

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

[4]15 U.S.C.A. § 1692f (2009) reads in pertinent part: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

[5](*See* Def. Mot. Summ. J., filed Sept. 15, 2011 (dkt. no. 24).)

[6](*See* Def. Mem. Supp. Mot. Summ. J., filed Sept. 15, 2011 (dkt. no. 25), at 4–5.)

[7](*See* Order, filed Nov. 28, 2011 (dkt. no. 44).)

notifying him . . . .[8]

Subsequent to the court's order of November 28, 2011, Bennett Law filed a second motion for summary judgment,[9] this time arguing that "Plaintiffs' agreement had to be in writing under the Statute of Frauds. There is no writing and therefore no enforceable agreement."[10]

Plaintiffs subsequently filed their response in opposition to Bennett Law's second motion for summary judgment,[11] after which Bennett Law filed its reply memorandum.[12] In its reply memorandum, Bennett Law raised an additional argument, asserting in pertinent part:

> Even presuming for the purposes of argument, that there was in fact an agreement for Plaintiffs to make monthly payments of $25.00 toward their outstanding debt . . . and that alleged agreement was not barred by the Statute of Frauds, Plaintiffs would have breached the theoretical agreement one month after it was alleged to have been made. In this regard, Plaintiffs claim that they arranged with Bennett for monthly payments of $25.00 to begin on or before June 30, 2010. The records provided by Plaintiffs show a checks made out June 30, 2010; August 5, 2010 and October 1, 2010, which indicate that although Plaintiffs may have agreed to make monthly payments of $25.00, they failed to do so.[13]

The matter came on for hearing on March 29, 2012, at which time the court denied defendant's second motion for summary judgment as to the Statute of Frauds issue.[14] Also at the

---

[8](*See* Pls.' Compl. ¶ 11.)

[9](*See* Def.'s Second Mot. Summ. J., filed Feb. 2, 2012 (dkt. no. 49).)

[10](*See* Def.'s Mem. Supp. Second Mot. Summ. J., filed Feb. 2, 2012 (dkt. no. 50) ("Def.'s Mem."), at 3.)

[11](*See* Pls.' Resp. to Def.'s Second Mot. Summ. J., filed March 1, 2012 (dkt. no. 53) ("Pls.' Resp.").)

[12](*See* Def.'s Reply to Pls.' Resp., filed March 6, 2012 (dkt. no. 55) ("Def.'s Reply").)

[13](*Id.* at 4.)

[14](Transcript of Hearing, dated March 29, 2012 (dkt. no. 64) ("Second Mot. Summ. J. Hr'g Tr."), at 41:5–6):

(continued...)

3

hearing, the court granted plaintiffs ten days from the date of the hearing to provide the court

with supplemental briefing as to the additional argument raised in defendant's reply brief.[15] On

April 9, 2012, plaintiffs provided the court with their supplemental brief in opposition to

summary judgment for defendant.[16]

## II. DISCUSSION

A "court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17]

Prior to determining whether a genuine dispute exists, the court will first set forth the

material facts.

### A. Material Facts[18]

On June 24, 2010, plaintiff Brandon Watters ("plaintiff" or "Brandon") telephoned

---

[14](...continued)

THE COURT: The Motion for Summary judgment footed on the Statute of Frauds, of course, I've indicated I'm denying.

[15](*See id.* at 38:5–13):

THE COURT: But the more fundamental motion is one of proof and one of demonstrating that you did, indeed, write [a check] every month. And you say you need to talk to your client on that, and that's fine. If you've got anything along those lines that is representative of the payment, like a canceled check that is sent and endorsed, a receipt executed by the creditor, anything of a physical nature like that, if you'll get that to me within the next ten days, I'd appreciate it.").)

[16](*See* Pls.' Supplemental Br. Opp'n Summ. J. for Def., filed Apr. 9, 2012 (dkt. no. 56) ("Pls.' Supplemental Br.").)

[17]Fed. R. Civ. P. 56(a).

[18]In compliance with Fed. R. Civ. P. 56(c), plaintiffs have provided the court with facts by "citing to particular parts of materials in the record, including depositions, documents, [and] affidavits or declarations."

Bennett Law on two occasions.[19] Each of the telephone conversations were recorded, and transcripts of each are included within the deposition transcript of Michael Ben Bennett,[20] which plaintiffs' counsel attached as "Ex. A" to his declaration in support of plaintiffs' supplemental brief.[21]

On the first occasion, plaintiff spoke with a woman who identified herself as Ms. Rose.[22] Plaintiff's conversation with Ms. Rose was relatively brief and ended with Ms. Rose notifying plaintiff that she would have to call plaintiff back within approximately five minutes.[23]

When Ms. Rose failed to call plaintiff approximately one-half hour after the first call ended, plaintiff telephoned Bennett Law a second time.[24] This time plaintiff spoke with someone who identified herself as Janet Fulcrum ("Ms. Fulcrum").[25] Plaintiff notified Ms. Fulcrum that his pay had been reduced by $25,000 a year.[26] Ms. Fulcrum suggested the possibility of plaintiff offering a settlement of potentially fifty, sixty, or seventy percent of the outstanding balance,[27]

---

[19](*See* Michael Ben Bennett Dep., dated Mar. 6, 2012 (dkt. no. 57 Ex. A) ("Bennett Dep."), at 43:8–44:18, 45:15–49:6.)

[20] Mr. Bennett is the managing shareholder of Bennett Law. (*Id.* at 4:9–10.)

[21](*See* Pls.' Supplemental Br. at 1–2.)

[22](*See* Bennett Dep. at 44:16.)

[23](*Id.* at 43:8–44:18, 44:12–17.)

[24](*Id.* at 45:19–21.)

[25](*Id.* at 46:23.)

[26](*Id.* at 47:19–23.)

[27](*Id.* at 48:12–17.)

after which Ms. Fulcrum stated that "[a]s long as you work it out, they'll work with you."[28]

Plaintiff then inquired as to whether he was supposed to send in monthly payments,[29] and Ms.

Fulcrum responded by telling plaintiff that he needed "to be more specific about the payment's

[sic] arrangement."[30] Immediately thereafter, Ms. Fulcrum asked plaintiff to "[h]old on for one

second,"[31] after which it appears the recording abruptly ended.[32]

However, plaintiff alleges that the second telephone call did not end when Ms. Fulcrum

placed plaintiff on hold and the recording terminated.[33] Rather, plaintiff states that "Ms. Rose

picked up the call after the hold and [plaintiff's] conversation thereafter with Defendant

continued with Ms. Rose only."[34] At his deposition, Mr. Bennett was unable to explain why the

recording ended after Ms. Fulcrum placed plaintiff on hold,[35] nor did Mr. Bennett dispute that

plaintiff conversed with Ms. Rose after being placed on hold by Ms. Fulcrum.

Plaintiff further avers that

[a]fter the aforementioned hold, Ms. Rose and [plaintiff] agreed to the following
regarding payments: $25 per month would be paid on or before the 16th of every
month, starting in July, 2012 [sic]; in exchange Defendant would agree to
withhold filing suit for a "few months" while good faith payments were made, and

---

[28](*Id.* at 48:24–25.)

[29](*Id.* at 49:1–2.)

[30](*Id.* at 49:5–6.)

[31](*Id.* at 49:6.)

[32](*See* Pls.' Supplemental Br. at 2 ("At the end of the conversation with Ms. Fulcrum, Ms. Fulcrum asked Mr. Watters to hold and the recording ended.").)

[33](*See id.*)

[34](*See* Aff. Brandon Watters Supp. Pls.' Supplemental Br., filed Apr. 9, 2012 (dkt. no. 58) ("Watters Aff."), ¶ 2.)

[35](*See* Bennett Dep. at 49:21–23.)

in addition agreed to make a good faith effort to confer with [plaintiff] about a possible settlement prior to filing any lawsuit.[36]

Plaintiff further alleges that after he came to an agreement with Ms. Rose, he informed Ms. Rose that he intended to send his first good faith payment on June 30, 2010.[37] Plaintiffs have provided the court with an image of a check dated June 30, 2010, written in the amount of $25.00 and payable to Bennett Law.[38] The check is drawn on plaintiff Brandon Watters' bank account.[39] The image of the back of the check displays an endorsement in the form of a "For Deposit Only" stamp which lists Bennett Law's name. Plaintiffs also supplied the court with the "Transaction Information" as provided by plaintiff's bank.[40] The information indicates that the entire $25.00 amount of the check cleared on July 7, 2010.[41]

Bennett Law also kept a registry of collection notes for plaintiffs' account, and plaintiffs obtained this registry through a discovery request. The bottom of page two and the top of page three of the registry contain several entries for June 24, 2010.[42] The fifth-to-last line of page two, is labeled as entry "(068)"and has a time of 17:36.[43] Entry (068) contains the words "BRANDON

---

[36](Watters Aff. ¶ 3.)

[37](*Id.* ¶ 4.)

[38](*Id.* Ex. A at Bates No. 033.)

[39](*Id.*)

[40](*Id.* Ex. A at Bates No. 033.)

[41](*Id.*)

[42](*See* Ex. B at 2–3.)

[43](*Id.* at 2.)

CIN PUT ON HOLD."[44] Twenty minutes later, entry (071) states that Brandon "WANTS TO DO

PYMENT [sic] ARRANGEMENTS."[45] The final entry on page two states that Brandon

"$$PROMISED PAYMENT$$."[46] The first entry on page three states that Brandon "PROM M

$25.00 06-30-10."[47] The third entry from the top of page three states that "HE WILL MAIL IN

PYMENT 25.00 LOST INCOME OF 26000 PER YEAR."[48] Further down on page three, entry

(093), which was entered at 16:32 on June 30, 2010, states "PROM M $25.00 07-16-10."[49]

Plaintiffs assert that the foregoing entries support their contention that plaintiffs entered

an agreement with defendant Bennett Law on June 24, 2010, under which they would make

$25.00 payments to Bennett Law by the sixteenth of each month.[50]

Plaintiffs also provided the court with an image of a check drawn upon Brandon's bank

account, payable to Bennett Law, dated August 5, 2010, and in the amount of $25.00.[51] A stamp

---

[44](*Id.*)

[45](*Id.*)

[46](*Id.*)

[47](*Id.* at 3.)

[48](*Id.*)

[49](*Id.*)

[50](*See* Pls.' Supplemental Br. at 3 ("From the citations to the record above, it is clear that
there is evidence from which a trier of fact could reasonably conclude that Plaintiff had an
agreement with Defendant to make payment of $25 per month before the 16th of every month,
beginning in July, and that Defendant agreed in turn to withhold legal action for at least a few
months while payments were made on time and to confer with Plaintiff about a possible
settlement prior to taking further action.").)

[51](Watters Aff. Ex. A at Bates No. 036.)

from Bennett Law on the back of the check indicates the check was "For Deposit Only."[52] The transaction information provided by plaintiff's bank indicates that the check cleared for the entire $25.00 on August 26, 2010.[53] Mr. Watters states that although the check was not cashed until August 26, 2010, he submitted the "second good faith payment on or about August 5, 2010."[54]

In response, Mr. Bennett testified at his deposition that Bennett Law "encourage[s] people to make as many payment [sic] as they want, but as far as a payment agreement or a payment arrangement, . . . we never make verbal agreements."[55] However, Mr. Bennett also testified that Bennett Law, "in attempting to avoid litigation or to stop litigation that is current, frequently agree[s] with debtors to accept payments on account under certain guidelines in exchange for certain promises and actions on [the debtor's] part."[56] Mr. Bennett subsequently attempted to clarify the foregoing testimony by stating that if Bennett Law "enter[s] into a settlement agreement with [the debtor], then there are certain things that need to be in place. We always accept, however, payments on account. We accept payments on account, but that doesn't

---

[52](*Id.* Ex. A at Bates No. 035.)

[53](*Id.*)

[54](*Id.* ¶ 7.)

[55](*See* Bennett Dep. at 72:13–18; *see also id.* at 50:13–25):

MR. BENNETT: Well, since the recording seems to have cut off before they got into details, it's hard for me to speculate as to what that [arrangement] would have been. I know our policies. And our current policies and policies in place at the time were in regards to payment arrangements under, under an agreement would be that they would make payment arrangements and we'd enter into a written agreement, and that written agreement would include an offer and compromise. And that if, if payments were insufficient below our ability to settle for the amounts that the client had given his authorization, blanket authorization for, then we were unable to make any kind of agreement.

[56](*Id.* at 30:25–31:6.)

necessarily mean that we make any promise on behalf of our clients."[57] Mr. Bennett further

indicated that "a promise on behalf of a debtor to pay a small amount toward a large balance

would not stop our litigation procedure in general."[58] In addition, Mr. Bennett agreed that he

found no indication where such a policy was made clear to plaintiff.[59] Despite the foregoing, he

disagreed with the characterization that such a policy is deceptive.[60]

On August 16, 2010, plaintiffs were served with notice of legal action at their private

residence despite allegedly having been current on their $25.00 payments.[61] On August 18, 2010,

plaintiff Brandon Watters called Bennett Law to "complain about the lawsuit having been

filed."[62] Defendant's collection notes registry confirms that plaintiff called Bennett Law on

August 18, 2010.[63]

During this conversation, plaintiff told the representative on the phone that he had been

---

[57](*Id.* at 31:19–24.)

[58](*Id.* at 59:13–16.)

[59](*Id.* at 59:20–21.)

[60](*Id.* at 59:22–23.)

[61](*See* Watters Aff. Ex. A at Bates No. 039.) As part of the exhibit attached to his affidavit (*Id.* Ex. A at Bates Nos. 039–040), plaintiff included a spreadsheet reflecting communications and events involving defendants. He created the spreadsheet on June 24, 2010. Every entry prior to that date had been previously handwritten. However, every entry after June 24, 2010 was entered contemporaneously on or about the date indicated. (*See id.* ¶ 10.)

[62](*Id.* ¶ 9.) Despite plaintiff's characterization that the lawsuit was "filed" sometime between August 16–18, 2010, the complaint naming Jaime Watters demonstrates that it was actually "filed" on August 23, 2010 in Fourth District Court, Utah County, Utah. (*See* Trigsted Decl. Ex. C at 1.)

[63](*See* Ex. B at 4, (150)–(160).)

served papers.[64] Plaintiff also told the representative that he had "made arrangements with Miss Rose for 25 a mth [sic]."[65] The representative responded by telling plaintiff that he could "send in what he can but legal action will still continue."[66]

Plaintiff alleges that Bennett Law did not confer with him as they said they would prior to filing suit against his wife.[67] However, hoping that Bennett Law would reconsider its decision to file a lawsuit, plaintiff sent Bennett Law a $27.00 payment—check number 1649—on September 3, 2010, but the payment did not clear his account.[68]

Plaintiff again submitted another payment of $27.00 on October 3, 2010, and it cleared his account on October 8, 2010.[69] Plaintiffs subsequently received a notice of entry of judgment on or about October 18, 2010, after which they stopped making payments.[70]

### B. Analysis

"[S]ummary judgment shall be granted if the summary judgment record shows that: (1) there is no genuine dispute, (2) as to any material fact, and (3) the moving party is entitled to

---

[64](*Id.* at 4, (153).)

[65](*Id.* at 4, (155)–(157).)

[66](*Id.* at 4, (158)–(160).)

[67](*See* Watters Aff. ¶ 8.)

[68](*See id.* ¶ 11.) Plaintiff also notified the court that because his checkbook does not make carbon copies, and because he did not make a copy of the check before it was sent, he did not attach a check image to his affidavit. However, he did enter it into the log of events and communications regarding Bennett Law (*Cf. id.* ¶ 12; *see id.* Ex. A at Bates No. 039.)

[69](*Id.* ¶ 13; *see also id.* Ex. A at Bates Nos. 037–038.)

[70](*Id.* ¶ 14.)

judgment."[71]

Within the context of summary judgment, a "movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[72] However, "a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim," but rather "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[73]

Here, plaintiffs will bear the burden of persuasion at trial. Defendant Bennett Law is moving for summary judgment, and therefore, bears the initial burden on its motion for summary judgment. Because Bennett Law will not bear the burden of persuasion at trial, Bennett Law need only make a "prima facie demonstration simply by pointing out to the court a lack of evidence for the [plaintiffs] on an essential element of the [plaintiffs'] claim"[74] to satisfy its burden on the motion for summary judgment.

Bennett Law asserts that plaintiffs lack evidence showing an agreement existed.[75] Bennett Law further asserts that even if an agreement existed, plaintiffs lack sufficient evidence

---

[71] 12B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil Rules—Quick Reference Guide* 893 (2011) (citing *Beard v. Banks*, 548 U.S. 521, 529 (2006)) (additional citations omitted).

[72] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[73] *Adler*, 144 F.3d at 671 (citing *Celotex*, 477 U.S. at 325).

[74] *Id.*

[75] (*See* Second Mot. Summ. J. Hr'g Tr. at 7:7–8):

MS. ANDERSON-WEST: My principal position is there was no agreement.

demonstrating plaintiffs' compliance with the agreement.[76] The existence of an agreement and compliance therewith are both essential elements of plaintiffs' claims.

Accordingly, the inquiry as to genuine dispute is two-fold: (1) whether there is a genuine dispute of material fact as to whether an agreement existed; and if so, (2) whether there is a genuine dispute of material fact as to whether plaintiffs honored their end of the agreement. If the answer to each question is "yes," the court must then deny defendant's second motion for summary judgment.

Based on the evidence presented, and remembering that the Tenth Circuit analyzes the alleged misrepresentations under the "least sophisticated consumer standard,"[77] the court answers each of the foregoing questions affirmatively, and therefore denies defendant's second motion for summary judgment.

### 1. The evidence establishes a genuine dispute as to whether the parties entered into an agreement

"A genuine dispute exists (and thus, summary judgment is improper) when a rational factfinder, considering the evidence in the summary judgment record, could find in favor of the

---

[76](*See* Def.'s Reply at 4.)

[77]*See Ferree v. Marianos*, 129 F.3d 130, at *1 (10th Cir. 1997) (unpublished) ("For claims under the FDCPA, other circuit courts of appeal have applied an objective standard, measured by how the least sophisticated consumer would interpret the notice received from the debt collector. The test is how the least sophisticated consumer—one not having the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives. The hypothetical consumer, however, "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." (internal citations and quotations omitted)); *see also Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320, 1329 (D. Utah 1997) ("The court analyzes the challenged statements under the least sophisticated consumer standard. This standard ensures that the FDCPA protects all consumers, the gullible as well as the shrewd." (internal citations and quotations omitted)).

non-moving party."[78]

The parties dispute the existence of an agreement. A simple agreement can be defined in two ways: (1) "[a] mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons"; and (2) "[t]he parties' actual bargain as found in their language or by implication from other circumstances, including course of dealing, usage of trade, and course of performance."[79] Therefore, the question before the court is whether a rational factfinder, considering the evidence in the summary judgment record, could find that Bennett Law and the Watters came to a mutual understanding as to their relative rights and duties regarding future performances. This mutual understanding can be implied from the parties' course of dealing, usage of trade, and course of performance. Considering the evidence in the summary judgment record, this court determines that a rational factfinder could find that the parties entered into an agreement.

Plaintiffs concede that they have "no written documentation to support the claim that an agreement was made,"[80] but written documentation is not necessary. At its most simple form, an agreement is nothing more than a "mutual understanding,"[81] and although such can be demonstrated through a writing, a mutual understanding can also be demonstrated by verbal and nonverbal conduct.

---

[78]Wright & Miller at 893 (citing *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009)) (internal quotations omitted) (additional citations omitted).

[79]*Black's Law Dictionary* 78 (9th ed. 2009).

[80](Def.'s Mem. Ex. A at 1.)

[81]*Black's Law Dictionary* at 78.

Although Mr. Bennett and his counsel testified that Bennett Law has a policy to "never make verbal agreements,"[82] and that promises "on behalf of a debtor to pay a small amount toward a large balance would not stop [Bennett Law's] litigation procedure in general,"[83] another portion of his testimony seemed to call these policies into question. Indeed, he also testified that "in attempting to avoid litigation or to stop litigation that is current, [Bennett Law] frequently agree[s] with debtors to accept payments on account under certain guidelines in exchange for certain promises and actions on [the debtor's] part."[84] This, it seems to the court, is the very essence of an agreement.

Mr. Bennett also testified that it is "the position of the firm . . . to pay the pay the entire account off within three months. . . . [I]f that is done . . . we enter into an agreement to settle the account, and there's exceptions to that policy about three months, but in general that's what our clients ask us to do . . . ."[85]

However, Brandon Watters provided a sworn affidavit to this court stating that Ms. Rose, an employee of Bennett Law, agreed with Mr. Watters that Bennett Law would "withhold filing suit for a 'few months' while good faith payments were made, and in addition agreed to make a good faith effort to confer with [plaintiff] about a possible settlement prior to filing any lawsuit."[86] Further complicating matters for Bennett Law is that the telephone recording

---

[82](*See* Bennett Dep. at 72:13–18; *see also id.* at 50:13–25; Second Mot. Summ. J. Hr'g Tr. at 6:18–19.)

[83](Bennett Dep. at 59:13–16.)

[84](*Id.* at 30:25–31:6.)

[85](*Id.* at 71:22–72:2.)

[86](Watters Aff. ¶ 3.)

curiously ended just prior to the entering of the alleged agreement. In addition, plaintiffs sent checks in the amount of $25.00 per month prior to the 16th of July and the 16th of August, and Bennett Law negotiated each of those checks. Further, the notations in Bennett Law's collection notes registry tend to corroborate Mr. Watters' affidavit, i.e. confirming that plaintiffs would make $25.00 payments, with a notation of July 16, 2010.

According to Mr. Bennett, such an agreement between the parties would have to be reduced to writing pursuant to Bennett Law's policy regarding agreements and settlements. Therefore, Mr. Bennett essentially argues that without a writing of some sort, the agreement between Bennett Law and plaintiffs is non-existent. However, Ms. Rose, as an employee of Bennett Law, acts as its agent.[87] As such, under a theory of apparent authority, Bennett Law will be bound by the actions and representations that Ms. Rose made to plaintiff,[88] unless Bennett Law provided to plaintiffs some sort of disclosure stating that despite any verbal representations by employees, all agreements must be reduced to writing.

The same also goes for any policy that the account must be paid off within three months. The effect of such a disclosure would require a mutual understanding between the parties that all accounts must be settled within three months despite any verbal representations to the contrary made by an employee of Bennett Law.

However, Bennett Law has not provided this court with evidence that it disclosed these policies to plaintiffs, i.e., evidence that Bennett Law provided plaintiffs with some sort of policy

---

[87] *See Restatement (Third) of Agency* § 1.01 cmt. c (2006) ("The elements of common-law agency are present in the relationships between employer and employee . . . .")

[88] *Id.* § 2.03 ("Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.").

indicating that all agreements must be reduced to writing, and that under any agreement to be

made, plaintiffs' account must be paid off within three months.

Accordingly, the court determines that a genuine dispute exists as to whether the parties

entered into an agreement. A rational factfinder, when looking at the evidence in this record,

could find that an agreement existed.

### 2. The evidence establishes a genuine dispute as to whether plaintiffs honored their end of the agreement

According to Brandon Watters, the following is the substance of plaintiffs' agreement

with Ms. Rose:

> Ms. Rose and I agreed to the following regarding payments: $25 per month would
> be paid on or before the 16th of every month, starting in July, 2012 [sic]; in
> exchange Defendant would agree to withhold filing suit for a "few months" while
> good faith payments were made, and in addition agreed to make a good faith
> effort to confer with me about a possible settlement prior to filing any lawsuit.[89]

Therefore, according to Mr. Watters' testimony, plaintiffs would have to pay $25.00 per

month on or before the sixteenth of every month, starting in July 2010.

The evidence—including images of the checks—which plaintiffs submitted to the court

demonstrates that plaintiffs timely made the $25.00 payments, and therefore, honored their end of

the agreement. Plaintiffs submitted the first payment on June 30, 2010, which cleared plaintiff's

account on July 7, 2010 (nine days before the July 16, 2010 due date).[90] Plaintiffs then submitted

the next $25.00 payment on or about August 5, 2010 (eleven days prior to the August 16, 2010

due date).[91] The check dated August 5, 2010 did not clear plaintiff's account until August 26,

---

[89](Watters Aff. ¶ 3.)

[90](*See id.* Ex. A at Bates No. 033.)

[91](*Id.* ¶ 7; *see also id.* Ex. A at Bates No. 036.)

2010 (ten days after payment was due).[92] This is of no legal consequence. Indeed, once plaintiffs sent the check and Bennett Law took possession of it, it was entirely Bennett Law's prerogative as to when to negotiate the check.

Even though plaintiffs had timely submitted and were current on their payments, Bennett Law filed a lawsuit against plaintiffs in Fourth District Court, Utah County, Utah, on August 23, 2010.[93]  Even so, plaintiffs submitted payments to Bennett Law in both September and October in  hopes that Bennett Law would reconsider its decision to file a lawsuit.[94] Plaintiffs stopped making payments only when they received notice of entry of judgment.[95]

Bennett Law's filing of a lawsuit breaches their alleged agreement that they would "withhold filing suit for a 'few months' while good faith payments were made."[96] Contrary to their alleged promise to forbear, Bennett Law filed suit after receiving plaintiffs' second monthly payment. Further, neither plaintiffs nor Bennett Law have provided this court with any evidence that Bennett Law made a "good faith effort to confer" with plaintiff about a possible settlement prior to filing a lawsuit,[97] which would also constitute a breach of the alleged agreement by Bennett Law.[98]

Accordingly, the court determines that a genuine dispute exists as to whether plaintiffs

---

[92](*Id.* Ex. A at Bates No. 035.)

[93](*See* Trigsted Decl. Ex. C at 1.)

[94](*See* Watters Aff. ¶¶ 11, 13–14.)

[95](*Id.* ¶ 14.)

[96](Watters Aff. ¶ 3.)

[97](*Id.*)

[98]*See infra* Part II.B.3.b.

performed their end of the alleged agreement. A rational factfinder, when looking at the evidence in this record, could find that plaintiffs honored their agreement by making timely payments.

**3. These genuinely disputed facts are material because they affect the outcome of the case**

"A fact is 'material' if it might affect the outcome of the case."[99] The Tenth Circuit has also characterized a fact as "material" if "under the substantive law it is essential to the proper disposition of the claim."[100]

Plaintiffs allege in their complaint that Bennett Law violated 15 U.S.C. §§ 1692e(10), 1692f by "reneging on an agreement it made with Plaintiff to forestall further collection actions as long as Plaintiff made payments of $25 per month toward the debt."[101] Plaintiffs expounded upon this allegation both in their supplemental brief and also at the most recent hearing before this court. In their supplemental brief, plaintiffs state that Bennett Law also "agreed to make a good faith effort to confer with [plaintiffs] about a possible settlement prior to filing any lawsuit."[102] At the March 29, 2012 hearing before this court, plaintiffs' counsel stated:

> I believe, based on the recording, that that was [Bennett Law's] obligation, not to continue enforcement or to withhold enforcement forever as long as the $25 a month payments were made, but rather, "We're going to withhold enforcement now while you make those payments. And then we will confer later and figure out what was going to go on." And that, they did not do.[103]

---

[99]Wright & Miller at 894 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986)) (additional citations omitted).

[100]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (internal quotations and citations omitted).

[101](*See* Pls.' Compl. ¶ 11.)

[102](Watters Aff. ¶ 3.)

[103](Second Mot. Summ. J. Hr'g Tr. at 34:18–24.)

To affect the outcome of the case, or be considered essential to the proper disposition of the claim, the foregoing facts that plaintiffs have proffered would need to amount to a violation of 15 U.S.C. §§ 1692e(10), 1692f. However, prior to analyzing the substance of plaintiffs' claims under §§ 1692e(10), 1692f, the court must determine whether Bennett Law is a "debt collector" under the Fair Debt Collection Practices Act as both of the foregoing subsections apply only to "debt collectors."

**(a) Defendant Bennett Law is a "debt collector" pursuant to 15 U.S.C. § 1692a(6)**

Plaintiffs allege[104] that Bennett Law is a debt collector as defined by 15 U.S.C.A. § 1692a(6) (2009), which reads in pertinent part:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

In their answer to plaintiffs' complaint, Bennett Law denied the allegation that it is a "debt collector" because it "is without sufficient information or belief to respond to this allegation."[105] However, the facts in the record indicate that Bennett Law is, in fact, a debt collector.

To be a debt collector, a person or organization must (1) use an instrumentality of interstate commerce or the mails, (2) for the principal or regular purpose of attempting to collect debts, (3) asserted to be owed to another.[106]

**i. Defendant Bennett Law used an instrumentality of interstate commerce by attempting to collect a debt from plaintiffs over the telephone**

---

[104](*See* Pls.' Compl. ¶ 6.)

[105](Def.'s Answer, filed Apr. 7, 2011 (dkt. no. 8), ¶ 6.)

[106]*See* 15 U.S.C. § 1692a(6).

"It is general knowledge that telephones . . . are instrumentalities *of* interstate commerce whether or not they are used *in* interstate commerce."[107]

Here, there is no dispute that Bennett Law attempted to collect a debt from plaintiffs through various telephone conversations. Indeed, the content of the June 24, 2010 telephone conversations between Bennett Law and Brandon Watters are included within the deposition transcript of Michael Ben Bennett.[108] During these conversations, Ms. Fulcrum engages in a discussion with Brandon Watters about the possibility of repaying fifty, sixty, or seventy percent of the outstanding balance.[109]

Because Bennett Law used a telephone—which is an "instrumentality of interstate commerce"—in an effort to collect a debt from plaintiffs, defendant has satisfied the first prong of the statutory "debt collector" definition.

### ii. The evidence in the record demonstrates that defendant Bennett Law's principal or regular business is the collection of debts

In interpreting the term "regular,"[110] one court held that an attorney was "regularly

---

[107]*United States v. Augustin*, No. 1:09-CR-187, 2011 WL 294281, at *3 (E.D. Tenn. Jan. 27, 2011) (unpublished) (citing *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999) ("It is well established that telephones, even when used intrastate, constitute instrumentalities *of* interstate commerce.")) (additional citations omitted); *cf. Loveridge v. Dreagoux*, 678 F.2d 870, 874 (10th Cir. 1982) (quoting *Kerbs v. Fall River Indus., Inc.*, 502 F.2d 731, 738 (10th Cir. 1974) ("[B]oth intrastate and interstate telephone communications are part of an aggregate telephonic system as a whole. And as long as the instrumentality itself is an integral part of the interstate system, Congress has power, when necessary for the protection of interstate commerce to include intrastate activities within its regulatory control.") (internal citation omitted) *abrogated on other grounds by Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 169 (1994)).

[108](*See generally* Bennett Dep. at 43:8–49:6.)

[109](*Id.* at 48:12–17.)

[110]One court aptly and succinctly provided a mini-survey amongst the circuits on this

(continued...)

21

engaged in debt collection practices under the FDCPA by consistently accepting at least 10 debt collection matters every year."[111] That same court also held that "'debt collection services may be rendered "regularly" even though these services may amount to a small fraction of the firm's total activity.'"[112]

Similarly, another court held that even though a law firm's debt collection activity made up less than four percent of the firm's total business, it satisfied the "regularly" standard set forth

---

[110](...continued)

issue:

> Although the Tenth Circuit has not ruled on this issue, it has been considered by other Circuits. Several Circuits have focused on the percentage of an attorney's practice that consisted of debt collection. For example, in *Fox v. Citicorp Credit Services, Inc.*, the Ninth Circuit held that an attorney who stated that "98 to 100 percent of his practice from 1989 to 1991, and 80 percent from 1986 to 1989" involved debt collection was a "debt collector." 15 F.3d 1507, 1513 (9th Cir.1994). In *Schroyer*, the Sixth Circuit concluded that where only two percent of a law firm's practice consisted of debt collection cases and that the attorney in question's practice consisted of only 7.4% of debt collection cases, the parties did not "regularly collect debts." 197 F.3d at 1176. The Fourth Circuit held that an attorney who received 70–80% of his total fees from debt collection met the FDCPA's definition of a "debt collector." *Scott v. Jones*, 964 F.2d 314 (4th Cir.1992).

> On the other hand, the Fifth Circuit has held that "if the volume of a person's debt collection services is great enough, it is irrelevant that these services only amount to a small fraction of his total business activity; the person still renders them 'regularly.'" *Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir.1997). The *Garrett* court found that "a person who, during a single nine-month period, attempts to collect debts owed another by 639 different individuals" qualifies as a "debt collector" under § 1692(a)(6). *Id.* at 318.

*Kvassay v. Hasty*, 236 F. Supp. 2d 1240, 1269 (D. Kan. 2002).

[111]*Silva v. Mid Atlantic Mgmt. Corp.*, 277 F. Supp. 2d 460, 466 (E.D. Pa. 2003).

[112]*Id.* (quoting *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir. 1999)).

in the statute.[113] The court reasoned that "[d]ebt collection services may be rendered 'regularly'

by defendant even though these services may amount to a small fraction of the firm's total

activity."[114] Indeed, "[i]t is the volume of the attorney's debt collection efforts that is dispositive,

not the percentage such efforts amount to in the attorney's practice."[115] The court was also

persuaded by the law firm's ongoing relationship with Chrysler, "a large corporation with

presumably many overdue accounts on its books."[116]

Although this court will not render an opinion as a threshold percentage or volume of

debt collection in which one must engage to rise to a level that would satisfy the statute, based on

the representations of defendant's counsel at the most recent hearing, Bennett Law easily satisfies

the "regularly" standard required by the statute. At the most recent hearing, counsel for Bennett

Law explained to the court that "Bennett Law is divided into a group of people who make calls to

collect debts, and then there's also a separate litigation section. So when the first part wasn't able

to get timely payments, then it went over to the litigation section."[117]

Further, counsel explained that Bennett Law is "Midland's corporate attorney," and that

"Midland is the largest debt buyer. So [Midland] would buy a big huge pool of uncollected debt

for pennies on the dollar."[118] Therefore, the implication is that as the corporate attorney for "the

---

[113]*See Stojanovski v. Strobl & Manoogian, P.C.*, 783 F. Supp. 319, 322 (E.D. Mich. 1992).

[114]*Id.*

[115]*Id.*

[116]*Id.*

[117](Second Mot. Summ. J. Hr'g Tr. at 12:11–16.)

[118](*Id.* at 11:9–12.)

largest debt buyer," Bennett Law would certainly be "regularly" engaged in the collection of debts. And if one is still not satisfied that Bennett Law is "regularly" engaged in the collection of debts, defendant's counsel also represented to the court that Bennett Law is collection counsel for Wal-Mart, Shopko, and Target,[119] all of which are "large corporation[s] with presumably many overdue accounts on [their] books."[120]

As corporate counsel for Midland, and as debt collection counsel for Wal-Mart, Shopko, and Target, and as evinced by Bennett Law's business structure, it is evident that Bennett Law is "regularly" engaged in the collection of debts, whether through litigation or over the telephone. Certainly Bennett Law is "regularly" engaged in the collection of debts if an entire group of the firm is devoted to the collection of debts via telephone, while the other group is engaged in the collection of debts via litigation. Indeed, the court is unaware that Bennett Law practices anything other than debt collection law.

### iii. The record demonstrates that defendant Bennett Law, by attempting to collect a debt owed to Midland, attempts to collect debts asserted to be owed to another

The United States Supreme Court has unanimously held that the term "debt collector" "applies to a lawyer who 'regularly,' *through litigation*, tries to collect consumer debts" on behalf of a client.[121]

At the most recent hearing, defendant's counsel acknowledged that Bennett Law is Midland's corporate counsel, and that Bennett sued plaintiff to collect a debt on behalf of

---

[119](*Id.* at 13:5–6.)

[120]*Stojanovski*, 783 F. Supp. at 322.

[121]*Heintz v. Jenkins*, 514 U.S. 291, 292 (1995).

24

Midland.[122] As such, in attempting to collect the debt owed to its client, Bennett Law was attempting to collect a debt asserted to be owed to another.

Further, in light of the Supreme Court's holding in *Heintz*, Bennett Law, as a law firm attempting to collect debts on behalf of its clients, certainly satisfies the statutory definition of "debt collector."[123]

> **(b) If a rational factfinder determines that plaintiffs' genuinely disputed facts are true, the rational factfinder may also find that Bennett Law violated 15 U.S.C. §§ 1692e(10), 1692f**

In light of the genuinely disputed facts, the court must make two inquiries to determine whether a rational trier of fact could find that Bennett Law violated §§ 1692e(10), 1692f. First, the court must identify the means or representations Bennett Law allegedly employed to collect the debt from plaintiffs. Second, the court must determine whether a rational trier of fact, if finding the genuinely disputed facts as true, could determine that Bennett Law's means or

---

[122]

> MS. ANDERSON-WEST: Well, Midland is the largest debt buyer. So they would buy a big huge pool of uncollected debt for pennies on the dollar. And Bennett Law is actually Midland's corporate attorney.
> THE COURT: Okay.
> MS. ANDERSON-WEST: And –
> THE COURT: And he sued on behalf of Midland?
> MS. ANDERSON-WEST: Correct. Correct. . . .

(Second Mot. Summ. J. Hr'g Tr. at 12:9–16.)

[123] The court also points out that counsel for Bennett Law referred to her client and their employees as "debt collectors" or being engaged in "debt collection" several times throughout the hearing. (*See id.* at 5:24; 9:16–22; 12:1.)

representations were misleading, deceptive, false,[124] unfair, or unconscionable.[125]

The genuinely disputed facts are that Ms. Rose—a representative of Bennett Law—agreed to the following with plaintiffs:

> $25 per month would be paid on or before the 16th of every month, starting in July, 2012 [sic]; in exchange Defendant would agree to withhold filing suit for a "few months" while good faith payments were made, and in addition agreed to make a good faith effort to confer with [plaintiff] about a possible settlement prior to filing any lawsuit.[126]

If a rational trier of fact determines that the foregoing facts are true, the rational trier of fact could also determine that the means or representations made by defendant constitute a violation of 15 U.S.C. §§ 1692e(10), 1692f.

The undisputed facts also show that Bennett Law accepted plaintiffs' $25.00 payment but made no effort to confer with plaintiffs about a possible settlement of the entire debt prior to filing a lawsuit. Nor did Bennett Law forbear from pursuing legal action. Indeed, after plaintiffs were served with papers, Bennett Law's representative told plaintiffs that they were welcome to send payments, but legal action would still continue.

As recounted above, Mr. Bennett testified in deposition that Bennett Law "never make[s] verbal agreements" to forbear on collection litigation, and that they will accept payments on account, but that such payments "would not stop our litigation procedure in general." Given this testimony, if a rational trier of fact finds that the disputed facts concerning the agreement with plaintiffs are true, the trier of fact could also draw the inference that at the time Bennett Law

---

[124]See 15 U.S.C.A. § 1692e (2009) ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.").

[125]See id. § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.").

[126](Watters Aff. ¶ 3.)

made the agreement with plaintiffs, it did so with a present intent not to perform what it promised, that is, not to forbear on litigation until after the parties conferred in good faith on settlement of the entire debt. Such an inference would support a finding that Bennett Law's representations were misleading, deceptive, false—even fraudulent. As the Utah Supreme Court observed in *Von Hake v. Thomas*[127]: "We have repeatedly held that a promise of future performance, when made with a present intent not to perform and made to induce a party to act in reliance on that promise, constitutes actionable deceit and fraud."[128]

It is precisely this kind of deceit, fraud, or unfairness that a violation of 15 U.S.C. §§ 1692e(10), 1692f requires, and a rational trier of fact could infer that Bennett Law was deceitful or fraudulent, and at least unfair, if the rational trier of fact were to conclude that plaintiffs' factual allegations are true.

### III. CONCLUSION

In light of the foregoing, and pursuant to the standard set forth in Fed. R. Civ. P. 56(a), defendant is not entitled to judgment as a matter of law.

**IT IS ORDERED** that defendant's second motion for summary judgment is hereby **DENIED**.

**IT IS FURTHER ORDERED** that all parties shall appear before the court on May 22, 2012 for a Final Pretrial Conference.

**IT IS FURTHER ORDERED** that the parties shall submit a proposed Pretrial Order by May 18, 2012.[129]

---

[127]705 P.2d 766 (Utah 1985).

[128]*Id*. at 770 (citations omitted).

[129]The dates for the Final Pretrial Conference and Pretrial Order are consistent with the dates previously ordered by the court. (*See* Order, filed Apr. 19, 2012 (dkt. no. 61).)

DATED this __8__ day of May, 2012.

BY THE COURT:

BRUCE S. JENKINS
United States Senior District Judge